IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALICE A. POWELL,                                                    CV No. 06-1316-MO

                              Plaintiff,                            OPINION AND ORDER

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.


**MOSMAN, J.,**

       Plaintiff Alice Powell brings this action for judicial review of a final decision of the

Commissioner of the Social Security Administration denying her application for disability

insurance benefits ("DIB") under Title II of the Social Security Act.  This court has jurisdiction

under 42 U.S.C. § 405(g).  For the reasons set forth below, the Commissioner's final decision is

AFFIRMED.

       The court reviews the Commissioner's decision to ensure proper legal standards were

applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g);

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The parties are

Page 1 - OPINION AND ORDER

familiar with the facts of the case and they will not be set out here except as is relevant to the

discussion below.  The initial burden of proof rests upon the claimant to establish her disability.

Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The

Commissioner's decision must be upheld if "the evidence is susceptible to more than one rational

interpretation."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).    The administrative

law judge ("ALJ") rendering the decision here applied the five-step sequential process.  Bowen v.

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  The ALJ found that through

December 31, 2001, Ms. Powell retained the residual functional capacity ("RFC") to perform a

wide range of light work with the following limitations:  she could lift ten pounds frequently and

twenty pounds occasionally; she should not do any significant walking and only infrequent

kneeling; she should be allowed to alternate sitting and standing; she could do occasional short

drives; and she should not be exposed to high levels of pollutants, chemicals or fumes.  Based on a

vocational expert's ("VE") testimony, the ALJ found Ms. Powell retained the ability to perform

her past relevant work as a business services specialist, office technician and office assistant II and

thus she was not disabled.

The court notes the long procedural history in this case as it is relevant to consideration of

the ALJ's opinion.  Ms. Powell filed her application for benefits in February 1996, alleging an

onset date of February 1, 1996.  Her date last insured was December 31, 2001.  Thus she must

establish disability on or before her date last insured in order to be disabled and entitled to DIB.

Ms. Powell has had three hearings before three different ALJs over the course of the last ten years.

Her case was remanded once by the Appeals Council in July 1999 after the first ALJ's opinion,

and remanded once by this court in November 2002 after the second ALJ's opinion and denial of

rehearing by the Appeals Council.[1]  A third hearing took place in November 2005, and the ALJ issued his opinion in  May 2006 that is the subject of this appeal.

Ms. Powell contends the ALJ erred by:  (1) finding her testimony not credible;  (2) improperly evaluating Dr. Tsien's medical opinion; (3) improperly evaluating her RFC; (4) finding her capable of performing her past relevant work at step four; and (5) rejecting lay witness testimony.  In her reply, Ms. Powell withdrew her additional argument that the Commissioner failed to provide a complete transcript of the medical record.

I.      Ms. Powell's Credibility

Ms. Powell contends the ALJ wrongly questioned her credibility.  If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'"  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).  In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

---

[1] The parties stipulated to a remand for further proceeding with the following instructions: update the medical record, reconsider all medical opinions of record, and give specific consideration to the June 27, 1997, medical opinion of Dr. Tsien.  Tr. 591.

The ALJ relied on Ms. Powell's testimony, third party testimony and physicians' treatment notes in finding that record evidence was inconsistent with Ms. Powell's alleged extreme limitations. This was not error. The ALJ's analysis of Ms. Powell's credibility spanned several pages in his opinion and noted the following: inconsistencies in her testimony and treatment notes regarding the frequency of her diarrhea and constipation; inconsistencies in her reasons for leaving her last job in 1996 including that her husband received a big buy-out so they retired from California to Oregon; inconsistences as to the objects she can handle without dropping them due to numbness in her fingers; inconsistencies in her self-reported ability to type and write; inconsistencies among her self-reports of anxiety, stress, depression, irritable bowel syndrome ("IBS"), hypertension and migraines that physicians reported had been resolved; non-compliance with physicians' treatment recommendations; and medical evidence that was inconsistent with the severity of the symptoms she described. Tr. 565-571.[2] The ALJ's credibility determination was supported by substantial evidence from the record and must be upheld.

Ms. Powell specifically assigns error to the ALJ's conclusions as to her failure to use medication, her purchase of a walker, and the questionable diagnoses of irritable bowel syndrome ("IBS"), ulnar neuropathy in her elbows, and intermittent anxiety. With regard to medication, the ALJ wrote: "The medications reported throughout the evidence of record are not suggestive of being totally disabled." Tr. 567. Ms. Powell asserts that the ALJ ignored her testimony that anti-inflammatories give her stomach problems, and that she has adverse reactions to some pain medications. I disagree with that characterization. Ms. Powell's testimony as to limited categories

---

[2] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Page 4 - OPINION AND ORDER

of drugs does not suffice to rule out numerous other palliative medications she could have tried but chose not to. The ALJ's consideration of Ms. Powell's limited use of medications was not error. With regard to her purchase of a walker, the ALJ noted Ms. Powell's consultation with orthopedist Dr. Davis in July 1997: "Dr. Davis prescribed heel lifts in an effort to treat the claimant conservatively, noting it should improve the claimant's gait and relieve her pain, but was of the opinion that the claimant would eventually need an ankle fusion." Tr. 562. Subsequently, Ms. Powell reported that the prescribed orthotics would have cost $280 and that she purchased a walker instead. The ALJ noted: "The claimant's non-compliance with treatment recommendations such as using foot orthotics would suggest that the claimant was not so limited as to see the need to aggressively pursue remedies." Tr. 567. The ALJ appropriately considered Ms. Powell's failure to follow a prescribed course of treatment in questioning her credibility. See Rollins v. Massinari, 261 F.3d 853, 860 n.2 (9th Cir. 2001). Also, Ms. Powell did not testify that the walker she purchased was less expensive than the orthotics. Thus her argument that the ALJ's failure to consider her lack of financial capability to secure treatment is unconvincing. With regard to the questionable diagnoses of IBS, the ALJ noted that Ms. Powell's reports of IBS symptoms were inconsistent and that there was no objective basis for a diagnosis of IBS after she failed to undergo a prescribed colonoscopy in 1996. Tr. 560, 566. The ALJ also noted that one-time examining physician Dr. Ehyai, who originally diagnosed the ulnar neuropathy in her elbows, subsequently questioned that initial diagnosis after an EMG and nerve conduction studies were normal. Tr. 557-58. Finally, with regard to her intermittent anxiety, the ALJ analyzed all Ms. Powell's psychological records thoroughly and noted that her attorney recommended she see a psychiatrist to help her case, that the psychiatrist returned her care to her PCP after only three

visits noting that she was doing quite well, and that Ms. Powell testified in 2000 that her panic

attacks were mild and infrequent, maybe occurring once every six months or so.  Tr. 562-63.  The

ALJ's conclusions that Ms. Powell did not meet her burden of demonstrating that she had the

severe impairments of IBS, ulnar neuropathy, or anxiety were supported by the record.  The ALJ is

responsible for determining credibility, and for resolving ambiguities in the record.  Andrews, 53

F.3d at 1039.  The ALJ offered specific reasons based on substantial evidence for finding Ms.

Powell not credible.

II.      Medical Opinion of Dr. Albert Tsien

        Ms. Powell contends that the ALJ wrongly rejected the check-the-box questionnaire sent

by her attorney to Dr. Tsien, her treating physician, in June 1997.  In general, the opinions of

treating doctors should be given more weight than the opinions of non-treating doctors.  Reddick

v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  When the treating doctor's opinion is not

contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

supported by substantial evidence in the record.  Id.  Even if the treating doctor's opinion is

contradicted by another physician, the ALJ may not reject  the treating doctor's opinion without

providing "specific and legitimate" reasons supported by substantial evidence in the record.  Id.

However, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and

unsupported by the record as a whole . . . or by objective medical findings."  Batson, 359 F.3d at

1195; see also Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (treating physician's

conclusory statement which was unsubstantiated by relevant medical documentation may be

rejected).  Where the physician's opinion is given in a format that provides little opportunity to

explain the basis of the opinion, that opinion is entitled to little weight.  Crane v. Shalala, 76 F.3d

251, 253 (9th Cir. 1996).

The questionnaire at issue here contained sixteen questions with sub-parts, allowed for

only a "yes" or "no" answer without explanation, and only a few empty lines at the end for

additional comments which Dr. Tsien left blank.  Tr. 475-480.  The ALJ considered and rejected

Dr. Tsien's opinion as expressed in the questionnaire because he found it lacked supporting

medical evidence and clinical findings, relied on Ms. Powell's self-reports of previous diagnoses

which were not credible, contained diagnoses not made or substantiated by Dr. Tsien himself,

included diagnoses for conditions that Dr. Tsien found were controlled by medication or were non-

problematic, lacked specificity and clarity with regard to questions Dr. Tsien answered describing

what type of work Ms. Powell could or could not perform, and was based on Ms. Powell's

subjective complaints which the ALJ found not credible.  Tr. 561-62, 568-69.  The ALJ also noted

the following responses by Dr. Tsien in the questionnaire:

> [T]his physician also has specified in the same check form that objective evidence
> does not reasonably confirm the severity of the alleged symptoms.  This physician
> also has specified that he does not know if it is reasonable to believe that the
> claimant's objectively determined combination of medical conditions are of a
> severity which can be reasonably expected to give rise to the alleged symptoms.
> This physician has indicated on the form that he does not  know if the claimant is
> disabled based on objective medical findings.  It is only after questions are asked
> regarding claimant's subjective symptoms being fully credited that the physician
> provides his check marks indicating the significant "disabling" limitations
> described above.

Tr. 569 (citations omitted).  Thus the ALJ analyzed Dr. Tsien's opinion carefully but could not

credit that opinion because Dr. Tsien's conclusions were not supported by specific and complete

clinical findings, and were contradicted by other evidence of record.  This was not error.

Page 7 - OPINION AND ORDER

Ms. Powell objects specifically to the ALJ's conclusion that Dr. Tsien's opinion as to her functional limitations was based in part on her subjective complaints which the ALJ found not completely credible. In Batson, however, the court found that an ALJ may properly reject a treating physician's opinion that is based in part on a claimant's discredited subjective complaints. Batson, 359 F.3d at 1195 (ALJ properly discounted a treating physician's opinion that was in the form of a checklist, lacked supportive objective evidence, was contradicted by other opinions and assessments of claimant's condition, and was based on claimant's subjective descriptions of pain).

Ms. Powell argues that the ALJ violated his duty to develop the record in failing to question Dr. Tsien as to his "articulations of functional limitations" for Ms. Powell. However, there is no evidence that the ALJ had questions about Dr. Tsien's assessment. The ALJ noted that Dr. Tsien checked a box indicating his opinion that the objective evidence did not reasonably confirm the severity of the alleged symptoms (e.g. pain, fatigue, loss of stamina) arising from Ms. Powell's medical condition, and that Dr. Tsien signified that he did not know if it was reasonable to believe that Ms. Powell's objectively determined medical conditions were of a severity which could reasonably be expected to give rise to her alleged symptoms (e.g. pain, fatigue, shortness of breath, loss of stamina, etc.). Because the ALJ did not express any questions as to Dr. Tsien's articulations of functional limitations for Ms. Powell and because the record contains sufficient medical evidence for proper evaluation, the ALJ had no duty to request further information of Dr. Tsien. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record only triggered when there is ambiguous evidence or the record is inadequate to allow proper evaluation).

Finally Ms. Powell contends that the ALJ accepted Dr. Tsien's diagnosis of a pain disorder, but then failed to assess whether this mental impairment could account for her functional limitations.  I disagree.  First, Ms. Powell misreads the ALJ's opinion.  With regard to her pain, he wrote:  "The claimant has met her burden to demonstrate that she has a left ankle condition that causes severe chronic pain, consistent with Dr. Tsien's acknowledgment of a chronic pain disorder."  Tr. 562.  Thus the ALJ found that Ms. Powell's pain was consistent with Dr. Tsien's diagnosis but did not find that she had a  pain disorder specifically, or that a pain disorder was a severe impairment at step two in the sequential evaluation process.  Also, I find that the ALJ considered all of Ms. Powell's psychological impairments, including her allegations of pain as a result of her left ankle condition in determining her functional limitations.  Tr. 562-66.  In forming his conclusion, the ALJ noted that treating psychiatrist Dr. Reagan essentially indicated that all of Ms. Powell's psychological conditions were resolved as of his second session with her and that he did not report that Ms. Powell had any functional limitations as a result of psychological impairments.  Tr. 563.  Consistent with the evidence of record, the ALJ found that Ms. Powell had only mild limitations in activities of daily living due to psychological impairments.  Id.  The ALJ also noted that her treating physician, Dr. Tsien, had regularly reported that Ms. Powell's psychological issues were non-problematic.  Id.  Finally the ALJ noted that Ms. Powell's testimony did not provide evidence of psychological impairments.   Overall, the ALJ gave appropriate weight to the June 1997 medical opinion of Dr. Tsien.

III.    Evaluation of Residual Functional Capacity

Ms. Powell contends that the ALJ failed to properly evaluate her RFC.  A claimant's RFC assessment is a determination of what the claimant can still do despite her physical, mental and

other limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's RFC, an

ALJ must assess all the evidence including medical reports, and the claimant's and others'

descriptions of limitations to determine what capacity the claimant has for work despite her

impairments.  Id.  Social Security regulations define RFC as the "maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental requirements of

jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ found that through December

31, 2001, Ms. Powell retained the RFC to perform a wide range of light work with the following

limitations:  she could lift ten pounds frequently and twenty pounds occasionally; she should not

do any significant walking and only infrequent kneeling; she should be allowed to alternate sitting

and standing; she could do occasional short drives; and she should not be exposed to high levels of

pollutants, chemicals or fumes.  Tr.  565.

    Ms. Powell first contends that the ALJ erred in failing to assess whether she is capable of

working on a "regular and continuing basis" for 40 hours per week.  The ALJ's analysis of Ms.

Powell's RFC spanned seven pages in the record and I find that it sufficiently analyzed her

abilities and limitations before concluding that she was capable of performing a wide range of light

work prior to her date last insured.  That finding implicitly includes the requirement of working on

a sustained basis following a normal work schedule.

    Ms. Powell argues that record evidence contradicts an ability to perform sustained work

activity based on her subjective complaints and self-assessed limitations.  However, the ALJ

considered and dismissed  Ms. Powell's subjective assertions of limitations, finding that "the

claimant's statements concerning the intensity, duration and limiting effects of these symptoms are

not entirely credible." Tr. 580.  Also, as addressed above, the ALJ's finding that Ms. Powell

Page 10 - OPINION AND ORDER

lacked credibility was without error.  Indeed Ms. Powell's argument here merely rehashes her arguments regarding the ALJ's assessment of the medical and testimonial evidence.  Because these arguments were addressed and dismissed above, they will not be revisited here.

Next Ms. Powell argues that the ALJ failed to address all of the medical opinions in the record.  The ALJ's consideration of Dr. Tsien's opinion was discussed above.  With regard to Dr. Ehyai, the ALJ analyzed his opinion and noted that the EMG and nerve conduction studies performed to substantiate an initial diagnosis of ulnar neuropathy showed all was normal and that Dr. Ehyai questioned his original diagnosis following these tests.  Tr. 557-58; 336-38.  Ms. Powell points out that Dr. Ehyai also wrote that there was some evidence of mild irritation of the ulnar nerve.  Tr. 337.  Ms. Powell also points out that Dr. Nolan, a DDS examiner, noted, "History of what was reported to be an ulnar entrapment syndrome with possible superimposed carpal tunnel syndrome" and an impression of chronic low back pain.  Tr. 534.  Finally Ms. Powell points to neurologist Dr. Bufton's letter to DDS of May 1996 which mentioned that she should stand or walk only two hours a day.  Tr. 368.  The ALJ is responsible for resolving conflicts in the medical testimony and ambiguities in the record as he did here.  Andrews, 53 F.3d at 1039.  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Id. at 1039-40.  The ALJ analyzed all the medical evidence noted by Ms. Powell.  With only one visit to Dr. Ehyai as evidence and the doctor's questioning of his own diagnosis, and Dr. Nolan's failure to assess limitations resulting from ulnar nerve issues or low back pain, the ALJ's conclusion that "claimant has not met her burden to demonstrate that she had ulnar neuropathy (pinched ulnar nerves) during the time period at issue" must be upheld.  Tr. 558.  I also find no error in the ALJ's RFC formulation with regard to her other physical limitations.

Page 11 - OPINION AND ORDER

Ms. Powell argues that the ALJ failed to consider all of her impairments and the resulting limitations.  As discussed above, I find the ALJ properly considered and dismissed Ms. Powell's allegations of migraine headaches, depression, an anxiety disorder, hypertension and diarrhea/constipation.  See Tr. 565, 566 (migraines); 562-63, 566-67 (depression and anxiety); 560, 565 (hypertension); 560, 565, 566 (diarrhea/constipation).  With regard to obesity, neither Ms. Powell nor any of her physicians supplied evidence in the record that she experienced any functional limitations as a result of her obesity.  The claimant bears the burden of proof at steps one through four of the sequential evaluation process.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The claimant also has the responsibility of submitting medical evidence that supports her claim of disability.  Meanel, 172 F.3d at 1113.  Finally, the Ninth Circuit has explained that obesity need not be considered if a claimant does not identify any functional limitation that obesity causes that would impact the ALJ's analysis.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  With regard to stress, Ms. Powell again failed to provide any evidence of a mental impairment that caused her to experience greater limitations due to stress.  Overall, the ALJ satisfactorily considered all of Ms. Powell's impairments and the resulting limitations.

Ms. Powell argues that the ALJ erred in finding that she had an RFC for modified light work without conducting a function-by-function analysis of her ability to work.  Ms. Powell's argument that SSR 96-8p requires the ALJ to discuss her abilities on a function-by-function basis is not well taken.  SSR 96-8p requires an ALJ to assess work-related abilities on a function-by-function basis in formulating a claimant's RFC.  However, the ALJ's formulation of an RFC will not be deficient, even without a specific discussion of a claimant's abilities on a function-by-

function basis, as long as the ALJ provided substantial evidence to support his final conclusion as to the RFC.  Here, the ALJ's RFC formulation was based on substantial evidence in the record.

Finally, Ms. Powell argues that the ALJ's formulation of her need to alternate between sitting and standing lacked specificity.  I disagree.  The ALJ wrote:  "She should be allowed to alternate sitting and standing."  Tr. 565.  In his hypothetical to the VE, the ALJ stated:  "She should be allowed to sit and stand at will."  Tr. 768.  The ALJ's formulation of the sit-stand option was sufficiently clear and specific.

IV.    Finding at Step Four

Ms. Powell contends the ALJ erred in finding her capable of performing her past relevant work on the grounds that the ALJ's hypothetical to the VE was inadequate, and that the ALJ's should have performed a functional analysis of her past relevant work.  She argues that the ALJ failed to provide a correct hypothetical to the VE based on her impairments and her RFC, such that the VE's testimony could not form the basis for the ALJ's conclusion at step four that Ms. Powell was capable of performing her past work as a business service specialist, office technician, and office assistant II.  Ms. Powell's argument at step four merely repeats her arguments regarding the ALJ's assessment of the medical and testimonial evidence regarding her alleged limitations.  Because these arguments were addressed and dismissed above, they will not be revisited here.  If a claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE.  Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001).  Here, the ALJ relied on Ms. Powell's legitimate impairments that were supported by substantial evidence in the record in posing his hypothetical to the VE.  Thus the ALJ's finding at step four based on the VE's testimony is proper.  I also find that

the ALJ adequately analyzed Ms. Powell's capabilities and compared them to the requirements of her past relevant work.  The ALJ noted that he based his step four finding on the evidence of record, which included Ms. Powell's testimony, her vocational documentation, and the testimony of vocational experts from all three hearings.  His conclusion that Ms. Powell retained the ability to perform the demands of her past relevant work is supported by substantial evidence in the record.  Ms. Powell had the burden of showing she could no longer perform her past relevant work.  Barnhart v. Thomas, 540 U.S. 20, 25 (2003).  Because Ms. Powell was unable to meet this burden, the ALJ's step four finding will not be disturbed.

VI.    Lay Witness Testimony

Ms. Powell contends the ALJ improperly rejected the lay testimony of her husband, Donald Powell.  Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account.  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e).  Where an ALJ disregards lay testimony, he must provide germane reasons for doing so.  Dodrill, 12 F.3d at 919.  However, the ALJ is not required to discuss all evidence presented to him, and need only explain why "significant probative evidence has been rejected."  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ discussed Mr. Powell's testimony and found it was internally inconsistent, inconsistent with Ms. Powell's testimony, and inconsistent with the medical evidence.  Implicitly the ALJ gave little weight to Mr. Powell's testimony though he did not reject it specifically.  Relying on Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050 (9th Cir. 2006) and other cases, Ms. Powell contends that the ALJ's failure to properly discuss Mr. Powell's testimony was error.  I disagree.  In Stout, the lay witnesses described with specificity the claimant's inability to perform his past relevant

Page 14 - OPINION AND ORDER

work in that one witness had been the claimant's supervisor and co-worker for fifteen years.  Id. at

1053-54.  Both witnesses provided testimony, consistent with medical evidence, that the claimant

was not able to deal with the demands of his workplace, and gave specific examples of the types of

tasks the claimant could no longer perform in the workplace.  Id.  Thus the lay testimony in Stout

that went unmentioned was directly relevant to the VE testimony and to the ALJ's erroneous

conclusion that the claimant could return to his previous work.  See also Schneider v. Comm'r. of

Soc. Sec. Admin., 223 F.3d 968, 972-73 (9th Cir. 2000) (lay testimony from former employers gave

concrete examples of claimant's limitations in a work environment).  Here, by contrast, the ALJ

did discuss Mr. Powell's testimony, but found that it was inconsistent and not supported by the

medical record.  Nor was it the specific testimony of workplace qualifications that was ignored in

Stout.  Thus, the ALJ's discussion contained adequate reasons for finding Mr. Powell's testimony

unhelpful and not probative in considering Ms. Powell's claims.  After all, the ALJ need not

provide a reason for rejecting lay witness testimony, when it is not supported by the medical

record, nor must he discuss all evidence presented to him.  Vincent, 739 F.2d at 1394-95.  Under

Stout, a court may find that an ALJ's failure to discuss lay testimony was harmless error if the

reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the

testimony, could have reached a different disability determination."  Id. at 1056.  This case does

not involve a complete failure to discuss – just a failure to expressly reject Mr. Powell's testimony.

Even if the ALJ had failed to discuss Mr. Powell's testimony at all, fully crediting Mr. Powell's

testimony would not change the outcome of Ms. Powell's application for benefits.  Because Mr.

Powell's testimony was not significant probative evidence and would not have supported a

determination of disability, the ALJ's failure to reject it specifically was harmless error.

Page 15 - OPINION AND ORDER

CONCLUSION

For the foregoing reasons, the Commissioner's determination that Ms. Powell does not suffer from a disability and is not entitled to DIB under the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

Dated this  26th  day of September, 2007.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

Page 16 - OPINION AND ORDER